**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HERMAN BREWER, ET AL.,** | **Civil Action No. 08-1747-BJR** |
| **Plaintiffs,** | |
| **v.** | **ORDER DENYING CLASS CERTIFICATION** |
| **LORETTA LYNCH,** **United States Attorney General,** | |
| **Defendant.** | |

## I.      INTRODUCTION

Plaintiffs Herman Brewer and James Brooks, two African-American United States Marshals Deputies ("Deputies"), filed this lawsuit against the United States Marshals Service ("USMS" or "Defendant") on October 15, 2008. They assert disparate treatment and disparate impact claims, alleging that the USMS engaged in racial discrimination against them and other African American Deputies in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Specifically, Plaintiffs allege that USMS has department-wide policies and procedures that have an adverse affect on the promotion, reassignment, and duty awards available to African American Deputies. Plaintiffs seek, among other relief, a declaratory judgment that USMS's policies and procedures are unlawful, an injunction barring USMS from engaging in further unlawful discriminatory practices, an order restoring class members "into those jobs they would now be occupying but for USMS' discriminatory [practices]", and an award of back pay, front pay, and lost benefits. Amended Compl., Dkt. No. 66 at 66-68.

1

Currently before the Court is Plaintiffs' Motion for Class Certification filed pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). Dkt. 188. Plaintiffs seek to certify a class composed of all African American Deputies that were in grade levels GS-12 through GS-15 for the time period from April 22, 2007 through present—an estimated 270 individuals. They propose Plaintiff Brewer as the sole class representative.[1] Plaintiffs charge that class certification is appropriate in this case because the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation prerequisites for class certification set forth in Rule 23(a). They further contend that certification is appropriate under Rule 23(b)(2) because they seek declaratory and/or injunctive relief that would benefit the proposed class as a whole, or Rule 23(b)(3) because common questions of law and/or fact predominate over any questions affecting individual class members, thereby making a class action a superior means for resolving this lawsuit.

Defendant opposes the motion on several grounds. First, Defendant argues that the proposed class cannot be certified pursuant to Rule 23 because it is poorly defined and overbroad. Second, it claims that Plaintiffs' sole proposed class representative—Herman Brewer—lacks standing to seek injunctive and/or declaratory relief, and without standing to press a claim for such relief on behalf of the class, he cannot satisfy the typicality or adequacy prongs under Rule 23(a)(3) and (a)(4). Third, Defendant argues that Plaintiffs have failed to demonstrate commonality under Rule 23(a)(2) because the proposed class lacks a common question of law or fact. Fourth, Defendant contends that the class does not satisfy the requirements of Rule 23(b) because Plaintiffs seek individualized relief, and individualized inquiries predominate over any allegedly common issues. Lastly, Defendant claims that

---

[1] Plaintiff Brooks only seeks individual relief in this lawsuit.

Plaintiffs' statistician offers no opinion based on distinct analyses of two of the three USMS policies that Plaintiffs challenge.

Upon consideration of the parties' arguments, the relevant case law, and the entire record, the Court concludes that Plaintiffs' motion must be denied as a matter of law. The reasoning for the Court's decision is set forth below.

## II.      BACKGROUND

As discussed above, Plaintiffs allege that USMS has department-wide discriminatory employment policies and practices that adversely affect the promotion, reassignment, and duty awards of African American Deputies. Dkt. No. 66 ¶¶ 29, 34. Plaintiffs challenge three policies.[2] First, Plaintiffs claim that USMS's process for selecting Deputies (either through promotion or competitive lateral reassignment)—known as the Merit Promotion Plan—incorporates a number of features that impede the promotion of African American[s]." *Id*. at ¶ 38. Specifically, Plaintiffs challenge the final three stages of the Merit Promotion Plan. Second, Plaintiffs claim that USMS's procedure for making non-competitive lateral reassignments of Deputies "adversely affect[s] the ability of African American [Deputies] to secure promotions or career enhancing opportunities and experiences." *Id*. at ¶ 56. Third, Plaintiffs claim that USMS's procedure for making "Headquarter duty assignments" has disproportionally excluded African American Deputies from such assignments. Each of these procedures is described in more detail below.

---

[2] Initially, Plaintiffs challenged more USMS polices, but through motion practice in this case, the challenges have dwindled down to three policies.

A.      The Merit Promotion Plan

The Merit Promotion Plan is USMS's established procedure for promoting and/or laterally reassigning Deputies to permanent positions at grade levels GS-13 through GS-15.[3] *See* Fourth Declaration of Molly A. Lowry ("Lowry Dec."), Dkt. No. 216-2 ¶¶ 10-11. The current Merit Promotion Plan has been in place since 2003 and is implemented through the Merit Promotion Process. *Id.* ¶¶ 9-10. The Merit Promotion Process, in turn, is administered by the Merit Promotion Staff, a group of individuals who are employed by the Merit Promotion Branch, a division of the Human Resources Department at USMS. *Id.* ¶ 1. As noted above, Plaintiffs only object to the final three stages of the Merit Promotion Process; however, the entire process is summarized below for context.

Per the Merit Promotion Process, merit promotion vacancy announcements are distributed electronically to all employees. *Id.* ¶ 32. Those seeking the position, either through promotion or a competitive lateral reassignment, submit a Merit Promotion Resume (a specific USMS form). *Id.* ¶ 34. After the deadline to apply for the position has expired, the Merit Promotion Staff compiles a "score" for each of the "promotion candidates" (*i.e*, the candidates seeking a promotion rather than a lateral reassignment). *Id.* ¶¶ 36-37. The promotion candidates are scored under a system that weighs their education, experience, training, awards, knowledge of USMS policies, and writing ability. *Id.* ¶¶ 36-37. The top five highest scoring promotion candidates are placed on a "final certificate," also known as the "Best Qualified List." In addition to the top five highest scoring promotion candidates, any eligible lateral reassignment candidates

_____

[3] The term "lateral reassignment" is used when a deputy is selected for a position at his or her current or lower grade level. The Merit Promotion Plan applies to deputies who seek competitive selection for a lateral reassignment to a GS-13 through GS-15 position. As discussed later in this order, Defendant has a separate mechanism for non-competitive lateral reassignments. Lowry Dec. ¶ 11.

are also included on the final certificate. *Id.* ¶ 36. The names of the individuals on the final certificate are arranged in alphabetical order; the final certificate does not reveal the candidates' scores.

The final certificate, as well as some supporting documentation, is then provided to a Recommending Official—either an Assistant Director or a U.S. Marshal. The Recommending Official reviews the supporting documentation and may request or obtain additional information, including communicating with other U.S. Marshals or supervisory employees. *Id.* ¶ 40. In addition, the Recommending Official may choose to interview the candidates. *Id.* ¶ 41. Thereafter, the Recommending Official ranks the candidates in his or her order of preference. *Id.* ¶ 42.

The next step in the Merit Promotion Process is for the Career Board—a group of eight to eleven GS-14 and GS-15 law enforcement managers—to review the Recommending Official's recommendation. *Id.* ¶¶ 44-46. The Career Board deliberates over the candidates until it reaches a unanimous agreement. *Id.* ¶ 46.

The final step in the Merit Promotion Process is that the USMS Director makes the final decision for the position. *Id.* ¶¶ 48-49. The USMS Director may make one of three decisions: (1) follow the Career Board's recommendation, (2) select another candidate from the final certificate, or (3) cancel the vacancy announcement. *Id.* ¶ 49. Defendant asserts that, in practice, where a selection has been made, the Director has followed the Career Board's recommendation about 94% of the time, followed the Recommending Official's recommendation about 89% of the time, and selected another candidate about 4% of the time. *See* Hellberg Dec. ¶¶ 7-12. In addition, the Director has cancelled a position rather than make a selection about 2.5 % of the time. *See* White Report at 23.

### B.      Non-Competitive Lateral Reassignments

Next, Plaintiffs object to USMS's procedure for reassigning Deputies to lateral positions within the same grade level. USMS has the authority to reassign Deputies to different positions within the same grade level without invoking the competitive Merit Promotion Process described above. *See* 5 C.F.R. § 7.1. Defendant contends that it uses this authority sparingly and instead primarily relies on the Merit Promotion Process to fill its vacancies. *See* Harlow Dec. ¶¶ 13-14. Defendant claims that it employs its non-competitive lateral reassignment process when: (1) the vacancy is time-sensitive, (2) the vacancy is of special sensitivity, (3) an employee needs to be removed from a problematic situation, or (4) to accommodate an employee's personal circumstances. *Id.* U.S. Marshals and Assistant Directors have the authority to reassign employees within their respective districts or divisions without the need for approval for the Director. *Id.* ¶ 16.

### C.      "Headquarters Duty Assignments"

Lastly, Plaintiffs object to USMS's procedure for making what Plaintiffs term "Headquarters duty assignments." Plaintiffs use this term to refer to when Deputies are temporarily assigned to specialized tasks such as Operation FALCON, the Incident Management Team, and the Special Operations Group.[4] Dkt. No. 188 at 11-12; Dkt. No. 218 at 17. According to Plaintiffs, Headquarters duty assignments provide Deputies with experience in leadership and increase Deputies' chances for promotion in the future. Dkt. No. 188 at 11.

---

[4] Operation FALCON was a national USMS operation to apprehend fugitives that existed from 2005 to 2009. Dkt. No. 188, Ex. 5 at 94-95. The Incident Management Team exists under the auspices of the Tactical Operations Division and exists to aid in the management of emergency situations. Dkt. No. 188, Ex. 27. The Special Operations Group also operated within the Tactical Operations Division. Harlow Dep. at 87.

### D.      Proposed Class Representative Herman Brewer

Plaintiff Herman Brewer, an African American former USMS Deputy, served in the USMS for twenty-five years. During the time period at issue in this case, Brewer served as the GS-14 Assistant Chief Deputy U.S. Marshal for the District of Puerto Rico, the GS-15 Chief of the Office of Inspection, and the GS-15 Acting Chief Deputy U.S. Marshal for the District of Puerto Rico. Pursuant to the statute setting a mandatory retirement age of 57 for law enforcement officers, Brewer retired from the USMS in March 2014.

Brewer charges that while he was employed by USMS, he suffered racial discrimination with respect to his promotion (or lack thereof) and failure to be selected for a lateral reassignment and/or special assignments. Brewer claims that between 2007 and 2008, he unsuccessfully applied to as many as 19 positions (including at least one lateral transfer) before he was finally promoted to the GS-15 position of Chief Inspector of the Office of Inspections. He claims that each time he was denied a promotion, a less qualified white employee was given the position. Brewer also claims that "he was never [] given the opportunity from anyone in headquarters to lead a mission or special task force." Dkt. No. 66 at 45.

### E.      The Proposed Class Definition

Plaintiffs propose the following class:

All current and former African American Deputy U.S. Marshals, from April 22, 2007 forward in job series 1811, Criminal Investigators, in Grades GS-12 through GS-15 as to the class claims of disparate impact and pattern or practice racial discrimination regarding competitive promotions and directed reassignments.

Plaintiffs' Reply, Dkt. No. 218 at 2. From this class, Plaintiffs propose the following subclass:

African American Deputy U.S. Marshals, in Grades GS-13 through GS-15 is certified for purposes of disparate impact and pattern or practice racial discrimination regarding Headquarters duty assignments.

*Id*.

## III.   STANDARD OF REVIEW

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432. (2013) (internal quotations and citation omitted). Class certification is governed by Rule 23 and the party seeking certification has the burden to "affirmatively demonstrate" compliance with Rule 23 by a preponderance of the evidence. *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011). Under Rule 23(a), the party seeking certification must demonstrate, first, that: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *Id*.; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b). Here, Plaintiffs rely on Rule 23(b)(2) and (3). Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. *Wal-Mart*, 131 S. Ct. at 2549-50 (quoting Fed.R.Civ.P. 23(b)). Rule 23(b)(3), in turn, applies where "questions of law or fact common to class members predominate over any questions affecting only individual members," and the class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*. at 2549 n. 2 (quoting Fed.R.Civ.P.23(b)).

The Court must undertake a "rigorous analysis" in determining whether each of the Rule 23 requirements has been met. *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161 (1982)); *see also Halliburton Co. v. Erica P. John Fund, Inc*., 134 S. Ct. 2398, 2412 (2014) ("requir[ing] plaintiffs to prove—not simply plead—that their proposed class satisfies each requirement of Federal Rule of Civil Procedure 23"). Issues of merit must also be addressed to the extent they overlap with the Rule 23 requirements. *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013) ("Merit questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

Lastly, because district courts are "uniquely well situated to make class certification decisions," *McCarthy v. Kleindienst*, 741 F.2d 1406, 1410 (D.C. Cir.1984) (citing *Burns v. U.S. R.R. Ret. Bd*., 701 F.2d 189, 191 (D.C. Cir. 1983)), they exercise "broad discretion in deciding whether to permit a case to proceed as a class action." *Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C. Cir. 1994) (citing *Bermudez v. U.S. Dep't of Agric*., 490 F.2d 718, 725 (D.C. Cir.), *cert. denied*, 414 U.S. 1104 (1973)). Provided the district court "'applies the correct criteria to the facts of the case, the decision should be considered to be within [its] discretion.'" *Bermudez*, 490 F.2d at 725 (quoting *Gold Strike Stamp Company v. Christensen*, 436 F.2d 791, 792-793 (10th Cir. 1970)).

## IV.   DISCUSSION

### A.   Whether the Proposed Class Is Adequately Defined

As an initial matter, Defendant argues that Plaintiffs' proposed class is so poorly defined that is impossible to accurately ascertain who the class members are and/or the exact nature of the class claims. In such circumstances, Defendant argues, "[a] court … should deny class

certification." Dkt. No. 216 (quoting *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 287

F.R.D. 1, 29 (D.D.C. 2012) *vacated on other grounds*, 725 F.3d 244 (D.C. Cir. 2013)).

Courts in this Circuit have "grafted" onto Rule 23 an "implied" requirement that a court

should first determine whether a proposed class is adequately defined such that its members are

clearly ascertainable, before reaching the four "explicit" prerequisites of Rule 23(a). *In re Rail*

*Freight*, 287 F.R.D. at 28 (quoting *Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*, 274

F.R.D. 229 (S.D. Ill. 2011); *see also Johnson v. District of Columbia*, 248 F.R.D. 46, 52 (D.D.C.

2008); *DL v. District of Columbia,* 302 F.R.D. 1, 16-17 (D.D.C. 2013) (definiteness is a judicial

creation requiring that the class be (1) adequately defined and (2) clearly ascertainable). Other

Circuits have a similar requirement. *See*, *e.g.*, *Coll. of Dental Surgeons of Puerto Rico v. Conn.*

*Gen. Life Ins. Co.*, 585 F.3d 33, 41-42 (1st Cir. 2009) (noting that definiteness should be

considered at the same time as other Rule 23 requirements); *Jackson v. Se. Pa. Transp.*

*Authority*, 260 F.R.D. 168, 182 (E.D. Pa. 2009) (engaging in a preliminary analysis of the class

definition "in the interest of ensuring that the putative class is legally viable"); *Cunningham*

*Charter Corp. v. Learjet, Inc.*, 258 F.R.D. 320, 325-28 (S.D. Ill. 2009) (analyzing the implicit

requirements before turning to the four explicit prerequisites of Rule 23).

The requirement that the class be clearly defined "is not designed to be a particularly

stringent test."  *In re Rail Freight*, 287 F.R.D. at 28. Nevertheless, plaintiffs must at least be able

to establish that "the general outlines of the members of the class are determinable at the outset

of the litigation." *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,

Federal Practice & Procedure § 1790, at 118). "In other words, the class must be sufficiently

definite 'that it is administratively feasible for the court to determine whether a particular

individual is a member.'" *Id*. at 29 (quoting 7A Federal Practice & Procedure, supra, § 1760, at

10

121). A court therefore should deny class certification "where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult." *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003); *see also Johnson v. District of Columbia*, 248 F.R.D. at 52.

In this Circuit, district courts employ the following criteria to determine whether the proposed class is sufficiently definite: (1) the class must be ascertainable by reference to or based on objective criteria, and (2) analysis of the objective criteria must be administratively feasible. *See*, *e.g.*, *Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998); *Thorpe v. District of Columbia*, 2014 WL 1273134, at *15 (D.D.C. March 29, 2014) (noting that the "critical question is whether class membership 'can be ascertained' with reference to 'objective criteria'") (quoting Newberg of Class Actions).

"The level of [definiteness] ... required varies depending on the type of class sought to be certified" under Rule 23(b). *Thorpe*, 2014 WL 1273134, *15 (quoting *Kenneth R. v. Hassan*, 293 F.R.D. 254, 263–64 (D.N.H. 2013)). For example, in a Rule 23(b)(3) class action, "a high level of precision in defining class membership is necessary . . . because all class members must be identified in order to notify each of his or her opt-out rights, and, later, to distribute monetary relief." *Id.* (quoting *Kenneth R.*, 293 F.R.D. at 264); *see also DL*, 302 F.R.D. at 17 (same). However, where the plaintiff seeks certification of an injunctive class pursuant to Rule 23(b)(2), "actual membership of the class need not ... be precisely delimited" because such cases will not require individualized notice, opt-out rights, or individual damage assessments, and the defendant will be required to comply with the relief ordered no matter who is in the class. *Kenneth R.*, 293 F.R.D. at 264 (internal quotations omitted).

In this case, Plaintiffs seek certification of the following class:

> All current and former African American Deputy U.S. Marshals, from April 22, 2007 forward in job series 1811, Criminal Investigators, in Grades GS-12 through GS-15 as to the class claims of disparate impact and pattern or practice racial discrimination regarding competitive promotions and directed reassignments.

Plaintiffs' Reply, Dkt. No. 218 at 2. From this class, Plaintiffs propose the following subclass:

> African American Deputy U.S. Marshals, in Grades GS-13 through GS-15 is certified for   purposes of disparate impact and pattern or practice racial discrimination regarding Headquarters duty assignments.

*Id.*

Defendant asserts that this definition is "ambiguous" because "the meaning of the three terms central to the proposed class definition are inherently vague: 'promotions,' 'selections for positions,' and 'Headquarters duty assignments.'" According to Defendant, Plaintiffs have failed to define these terms, so it is impossible to determine who qualifies as a class member. *Id*. at 12.[5] Plaintiffs counter that the prospective class members are readily ascertainable based on the following criteria: "(1) whether a person was an African American [Deputy] within the specified time frame, (2) whether the [Deputy] was a GS-13 or higher, and therefore (3) subject to specific policies." Dkt. No. 218 at 2.

As an initial matter, the Court notes that Plaintiffs seek certification pursuant to Rule 23(b)(2) and (3). Therefore, as discussed above, a more precise class definition is required. *See DL*, 302 F.R.D. at 17 (noting that if plaintiffs seek certification pursuant to Rule 23(b)(3), precision is required). With this in mind, the Court finds that the proposed class is sufficiently

---

[5] Defendant also argues that the proposed definition is overbroad because the class definition includes all former and current African American deputies regardless of whether they participated in the USMS's promotion and transfer procedures, reached the challenged final stages of the procedures, or were in fact successful in those stages. Whether the definition is "overbroad" is not a criteria considered by courts in this Circuit when determining whether the class is sufficiently defined so as to adequately ascertain membership. Therefore, the Court will not address this argument.

definite such that class members "can be ascertained" with reference to "objective criteria." *See, e.g. Thorpe*, 2014 WL 1273134, at *15. The following "object criteria" can be lifted from Plaintiffs' class definition. In order to be a class member, an individual must: (1) be a current employee of or have been employed by the USMS at some point after April 22, 2007 to the present; (2) work(ed) in the "job series 1811" (*i.e.*, be a USMS Deputy); (3) in grade GS-12 through GS-15; and (4) be African American. The Court finds that this "objective criteria" is sufficient to allow individuals to readily determine whether they are class members, and therefore, the "ascertainability requirement" is met. *See, e.g., Bynum v. District of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2013) (holding that the ascertainability requirement was met when "the Court is satisfied that an individual would be able to determine, simply by reading the definition, whether he or she was a member of the proposed class").

The Court also finds that the "administrative feasibility requirement" is satisfied because identifying the class members under this definition would not require much, if any, individual factual inquiry. Determining whether an individual meets the above objective criteria would take little more than a perusal of the USMS's human resources records. *See, e.g., Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 101 (S.D.N.Y. 2009) (holding a class definition was administratively feasible because it simply required an inspection of a corporation's books to reveal owners of common stock and thus furnish the class members' identities);  *Salzman v. Pella Corp.*, 257 F.R.D. 471, 475 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 998 (2011) (the administrative feasibility requirement was met because class members could be identified through "a combination of the use of sales records, publication of notice, and verification by photograph").

The Court is not persuaded by Defendant's argument that this Court should reject certification of the class because Plaintiffs' proposed definition includes "inherently vague" terms. Specifically, Defendant complains that Plaintiffs fail to define the terms "promotions," "selections for positions," and "Headquarters duty assignments." While this Court agrees that, up to this point, Plaintiffs' claims have been somewhat of a moving target, the mere existence of a problematic class definition does not automatically mandate denial of class certification. *Jackson*, 260 F.R.D. at 182-83. Rather, the court may, if possible, limit or alter the definition to remedy the problem. *Id.* at 183 (citing *Finberg v. Sullivan*, 634 F.2d 50, 64 n. 9 (3d Cir. 1980) (where a potential issue with class certification can be resolved by redefining the classes, the district court "should not deny certification on account of such problems without considering the possibility of redefining the classes"). The Court finds that such a remedy is available here. Therefore, the Court holds that the class members consists of those individuals who satisfy the four objective criteria discussed above and who are or were subject to at least one of the following three USMS policies: (1) the final three steps for promoting Deputies in grades GS-12 through GS-15 under the Merit Promotion Process (*i.e.*, the recommendation by the Recommending Official, the recommendation by the Career Board, and the selection by the USMS Director), (2) the process for making non-competitive lateral reassignments, and (3) the policies regarding making Headquarters duty assignments.[6]

Based on the foregoing, this Court finds that Plaintiffs have satisfied the "implied requirement" of Rule 23 that the proposed class much be sufficiently definite.

---

[6] Defendant notes that the term "Headquarters duty assignments" is not a term of art within USMS. Harlow Decl. at ¶ 28. Defendant proposes the following definition: "the opportunity to perform duties for a USMS division without official personnel action that makes a [deputy] an official employee of the division, and where the selection is made by an employee of said USMS division." Dkt. No. 216 at 9; Harlow Decl. at ¶ 28. Plaintiffs do not object to this definition; accordingly, the Court will adopt it.

**B.    Whether Plaintiffs Have Satisfied the Rule 23(a) Prerequisites to Class Certification**

To obtain class certification, Plaintiffs must establish that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). These four prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively. *Daskalea v. Washington Humane Soc.*, 275 F.R.D. 346, 355 (D.D.C. 2011). Failure to satisfy any one of these prerequisites is fatal to the class certification request. *See Amchem*, 521 U.S. at 613-14 (noting that the Rule 23(a) requirements are "threshold requirements").

Defendant concedes that Plaintiffs satisfy the numerosity prerequisite. However, they contend that Plaintiffs cannot satisfy the remaining three prerequisites. This Court agrees that Plaintiffs face a significant challenge in meeting the three remaining prerequisite. However, because it is abundantly clear that Plaintiffs' sole proposed class representative cannot adequately represent the class members' interests, the Court will focus on the adequacy of representation prerequisite.

Under subsection (4) of Rule 23(a), Plaintiffs must establish that their proposed class representative "will fairly and adequately protect the interest of the class." Fed.R.Civ.P.23(a)(4). This requirement satisfies the due process concerns that "absent class members must be afforded adequate representation before entry of judgment which binds them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). Therefore, "[a]dequate representation depends on, among other factors …a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

As discussed earlier in this order, Plaintiffs seek both declaratory and injunctive relief as part of their class action. Specifically, they seek (1) a declaratory judgment that USMS's promotion, lateral reassignment, and award policies are unlawful and (2) an injunction barring USMS from employing said policies in the future. Indeed, Plaintiffs describe the declaratory and injunctive relief as "the predominate forms of relief" they seek in this lawsuit. Dkt. No. 66 at ¶ 97. Defendant charges that Plaintiff Brewer cannot adequately represent the proposed class because, as a former employee of USMS, he lacks standing to seek declaratory and injunctive relief. "Without standing to press a claim for [declaratory or injunctive] relief on behalf of the class," Defendant argues, "[Brewer] cannot satisfy Rule 23(a)'s [] adequacy prong[] because current employees have a substantial interest" in obtaining such relief. Dkt. No. 216 at 1. Plaintiffs counter with two arguments. First, they contend that it is premature for this Court to address whether Brewer has standing to seek declaratory and injunctive relief. Second, citing to a smattering of cases from other Circuits, they argue that former employees who were fired or quit as a result of discriminatory policies are still entitled to pursue class claims for such relief.

It is black letter law that Article III standing "is a threshold jurisdictional requirement" that must be determined at the outset of a case. *Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc*., 123 F.3d 111, 117 (3d Cir. 1997); *see also Bates v. United Parcel Service, Inc*., 511 F.3d 974, 985 (9th Cir. 2007). However—as Plaintiffs point out—the United States Supreme Court has carved out an exception to this black letter rule when class certification issues are "logically antecedent to Article III concerns." *Ortiz v. Fibreboard Corp*., 527 U.S. 815, 831 (1999). In such cases, the Supreme Court stated, the class certification issues may be properly treated before Article III standing. *Id*. Although the Supreme Court did not define the contours of "logically antecedent," there is a growing consensus among district courts

16

that class certification is "logically antecedent" where its outcome will affect the Article III standing determination. *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 213 (S.D.N.Y. 2012). On the other hand, the *Ortiz* exception does not apply to those cases where the standing issue would exist regardless of whether the potential class representative filed his claim alone or as part of a class. *See Clark v. McDonald's Corp.*, 213 F.R.D. 198, 204 (D.N.J. 2003) (citing *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 333 n. 2 (5th Cir. 2002). The present case is such a case. Here, Defendant argues that Brewer lacks standing to seek injunctive relief because he is no longer employed by USMS. This issue would exist regardless of whether Brewer brought this suit individually or on behalf of a putative class. Accordingly, this Court shall address Brewer's standing before class certification.

It is beyond dispute that Brewer does not have the right to pursue injunctive relief in this lawsuit. Indeed, Plaintiffs *concede* that Brewer cannot seek injunctive relief. *See* Pls. Mot. to Substitute Class Reps. at 1, Dkt. No. 184 (stating as a basis for motion that Brewer as a former employee cannot seek injunctive relief). Nevertheless, Defendant has conflated the doctrine of standing with the doctrine of mootness. Brewer has standing in this case. Article III standing is determined at the time the lawsuit is commenced, or in this case, at the time Brewer was added as a named plaintiff. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotations omitted) (standing is determined at the commencement of litigation); *DL v. District of Columbia*, 302 F.R.D. 1, 19 (D.D.C. 2013) (Article III standing is determined when the lawsuit is commenced). At the time that Brewer was added as a named plaintiff to this lawsuit, he was a current USMS employee. Therefore, he had and continues to have standing to pursue injunctive relief. *DL*, 302 F.R.D. at 19 ("[E]vents subsequent to the

filing of a complaint may *moot* the plaintiffs' claims, but the plaintiffs do not lose *standing*")
(emphasis in original).

However, it is also beyond dispute that Brewer is no longer an USMS employee and that
he has no prospect of returning as an employee. As such, this Court no longer has the ability to
give him injunctive relief. In other words, even if this Court were to grant the equitable relief
Plaintiffs seek (*i.e.*, a declaratory judgment that USMS's policies are unlawful and an injunction
barring USMS from engaging in those policies), such relief will not make Brewer whole.
Therefore, his claims to declaratory and injunctive relief are moot and must be dismissed. *See
Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam) (noting that if the court can no longer provide
plaintiff with meaningful relief, the case is moot and must be dismissed); *Al Najjar v. Ashcroft*,
273 F.3d 1330, 1336 (11th Cir. 2001) ("[D]ismissal is required" if a court can no longer provide
meaningful relief "because mootness is jurisdictional"); *Soliman v. United States*, 296 F.3d 1237,
1242 (11th Cir. 2002) ("[i]f events that occur subsequent to the filing of a lawsuit…deprive the
court of the ability to give the plaintiff…meaningful relief, then the case is moot and must be
dismissed.")

Faced with the reality that their sole proposed class representative cannot pursue "the
predominant form of relief sought in this action"—declaratory and injunctive relief—Plaintiffs
raise a last ditch argument that courts in other Circuits have allowed former employees to
maintain actions for injunctive relief. The fallacy with Plaintiffs' argument is that in each of the
cases they cite, the former employee sought reinstatement with the employer. In such
circumstances, the courts determined that granting injunctive relief could redress the former
employee's injury because a request for "reinstatement absent a corresponding injunction would
expose plaintiffs to the immediate threat of further discrimination." *Chen-Oster v. Goldman,*

*Sachs & Co.*, 877 F. Supp. 2d 113, 122 (S.D.N.Y. 2012). Here, however, Brewer does not seek

reinstatement. Indeed, he *cannot* seek reinstatement. Brewer is no longer employed with the

USMS because he reached the statutorily-mandated retirement age of 57. Accordingly, the cases

cited by Plaintiffs are not applicable.

Nor can Plaintiffs remedy Brewer's inability to adequately represent the class by simply

abandoning the declaratory and injunctive relief claims. Such action would constitute claim

splitting, something that is generally prohibited by the doctrine of res judicata, particularly in

class actions. Courts closely scrutinize claim splitting by a class representative and do not permit

such a plaintiff to "opt to pursue certain claims on a class-wide basis while jeopardizing the class

members' ability to subsequently pursue other claims." *See In re Conseco Life Ins. Co. LifeTrend*

*Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 531 (N.D. Cal. 2010) (quotation marks omitted);

*Nafar v. Hollywood Tanning Sys., Inc.*, 339 F. App'x 216, 224 (3d Cir. 2009) (stating that "[b]y

seeking only partial relief, [plaintiff] may be engaging in claim splitting, which is generally

prohibited by the doctrine of res judicata"). The reasoning underlying the prohibition against

claim splitting is particularly applicable in this case where Plaintiffs have repeatedly alleged that

the predominate relief they seek is equitable. Abandoning the request for equitable relief now

would jeopardize the class members from seeking such relief in the future. *Krueger v. Wyeth,*

*Inc.*, 2008 WL 481956, at *2, 4 (S.D. Cal. Feb.19, 2008) (noting that by leaving the class open to

those who suffered personal injury but not pursuing damages for personal injuries, the plaintiff

was engaging in claim-splitting, which the Court determined was a compelling reason to deny

class certification because the plaintiff was an inadequate class representative under the current

class definition); *Small v. Lorillard Tobacco Co. Inc.*, 252 A.D.2d 1, 11 (N.Y. App. Div. 1998)

(under New York's transactional approach to res judicata, by only seeking economic recovery

the plaintiffs would preclude other potential class members' chances of bringing potential claims for personal injury and emotional distress, and noting that the ability to opt out of the class was insufficient to protect the rights of putative class members who would want to seek remedies other than those chosen by the representatives).

Because Brewer cannot pursue declaratory or injunctive relief, he cannot adequately represent the proposed class. *See*, *e.g.*, *Ellis*, 657 F.3d at 986 ("As former employees, [named plaintiffs] would not share an interest with class members whose primary goal is to obtain injunctive relief. Thus . . . [named plaintiffs] will not adequately protect the interests of the class as a whole."); *see also*, *Hodgers—Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless . . . plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."); *Does I Through III v. Dist. of Columbia*, 216 F.R.D. 5, 9 (D.D.C. 2003) (same); Newberg on Class Actions § 3:59 (5th ed.) ("If a court finds that [a plaintiff's ability to pursue a claim] is lacking, then adequacy will be as well, for a plaintiff cannot be an adequate representative for claims she [can] not [] pursue.").

Plaintiffs' failure to satisfy the adequacy of representation prong is fatal to their class certification motion and it is not necessary for the Court to address the remainder of the Rule 23(a) prerequisites. Nevertheless, the Court notes that Brewer's inability to pursue declaratory and injunctive relief also means that he cannot satisfy the typicality prerequisite of Rule 23(a). *See e.g. Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class."); *Thompson v. Jiffy Lube Intern., Inc.*, 250 F.R.D. 607, 623 (D. Kansas 2008) ("Absent threat of future harm, plaintiff does not share a critical aspect of the claims of other class members for

20

prospective injunctive relief, and her claim is thus not typical); *Rector v. City and Cnty. of Denver*, 348 F.3d 935, 950 (10th Cir. 2003) ("By definition, class representatives who [cannot pursue class claims for relief] fail to meet the typicality requirement of Rule 23."). Not only is Brewer barred from pursuing the predominate relief the class members seeks, he is also barred from seeking reinstatement and/or promotion due to his mandatory retirement. As such, the relief he seeks is not "typical" of those class members who seek an order restoring them "into those jobs they would now be occupying but for USMS' discriminatory [practices]." Dkt. No. 66 at p. 67.

## V.    CONCLUSION

Based on the foregoing reasons, Plaintiffs' Motion for Class Certification is HEREBY DENIED and the class claims are dismissed.

Dated this 30th day of September, 2015.

Barbara Jacobs Rothstein
United States District Judge